UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| ANTHONY W. AUSTIN, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 3:22-cv-00068-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| FRANKLIN COUNTY, KENTUCKY, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

*** *** *** ***

This matter is before the Court on three motions to dismiss. [R. 4; R. 5; R. 6.] Mr. Austin alleges that the Defendants, all of whom are or were connected to the Franklin County Sherriff's Office, violently assaulted him multiple times on New Year's Day in 2020. [R. 1-1.] All of the Defendants argue that Mr. Austin's complaint, filed nearly three years after that incident, is untimely. [*See generally* R. 4; R. 5; R. 6.] Mr. Austin argues that the statute of limitations was tolled because the Defendants' conduct rendered him of unsound mind, making him incapable of managing his own affairs. [R. 18.] He attached affidavits to his response that provide factual detail supporting this argument, none of which is included in the Complaint. [R. 18-1; R. 18-2.] In the alternative to denying the motions to dismiss, he requests leave to amend his complaint. [R. 18 at 11.] Because justice so requires, the Court **DENIES WITHOUT PREJUDICE** the Motions to Dismiss **[R. 4; R. 5; R. 6]** and **GRANTS** Mr. Austin leave to amend.

**I**

On January 1, 2020, Mr. Austin was involved in a series of alcohol-fueled disputes with his housemates. [R. 1-1 at 4.] One called the Franklin County Sheriff's Office on Mr. Austin "four times that day." *Id*. The fourth time, deputies arrested Mr. Austin and he "did not cooperate in being taken away." *Id*. He states that the deputies "physically assaulted, subdued and handcuffed [him], and carried his unconscious body to a FCSO cruiser." *Id*. He believes that one deputy kneed him in the temple but has no personal memory of the events. *Id*. at 4-5.

Once Mr. Austin was in the cruiser, he regained consciousness. *Id*. at 5. He states that "the cruiser rocked and bucked as the deputies assaulted [him]" while he was handcuffed. *Id*. Mr. Doty, a sergeant at the time, drove him to the Frankfort Regional Medical Center, where Mr. Austin was handcuffed to a bed in the emergency room. *Id*. Mr. Austin was "upset and irritated and may have used a racial slur to refer to a negro Deputy in the room." *Id*. Mr. Doty "severely chastised" him "and then violently assaulted him, in the presence of the other Deputies in the room." *Id*. Mr. Austin states that this incident was captured on body cameras. *Id*. He states that Mr. Doty attempted to strangle and suffocate him during the encounter. *Id*. After Mr. Austin received treatment, Mr. Doty drove him to the jail. *Id*. at 6. Mr. Austin was ultimately charged with menacing, first degree resisting arrest, and disorderly conduct. *Id*.

Mr. Austin states that none of the officers filed a Use of Force Report or reported observing excessive force, which the Department would require in this situation. *Id*. Mr. Austin had no recollection of the events and suspected that his blackouts and injuries were from consuming alcohol. *Id*. at 6-7. He discovered the events in November 2021, when a relative who worked for the Frankfort Police IT department informed him that a video of the encounter existed. *Id*. He filed an open records request that was denied but triggered an internal review of

2

the interaction. *Id.* at 7. Sheriff Quire reviewed the body camera footage and fired Mr. Doty. *Id.* Mr. Austin has since been given access to the videos but claims that one is missing. *Id.* at 8.

Mr. Austin claims that he "suffered considerable mental and physical pain and suffering" because of the assault. *Id.* at 9-10. He was diagnosed with "a traumatic brain injury and occipital neuralgia and has incurred more than $100,000 of medical expenses." *Id.* He brings a number of claims against the Defendants under the U.S. Constitution and Kentucky law. *Id.* at 10-12.] Across the three Motions to Dismiss, the Defendants all seek dismissal of the complaint in its entirety. [R. 4; R. 5; R. 6.] One of their primary arguments is that the complaint is untimely. *See generally id.*

## II

### A

All of Mr. Austin's claims are governed by a one-year limitations period. Section 1983 does not provide its own limitations period, so federal courts borrow the most analogous statute of limitations from the state where the events occurred. *Zundel v. Holder*, 687 F.3d 271, 281 (6th Cir. 2012). In Kentucky, that statute is Ky. Rev. Stat. § 413.140(1)(a), which establishes a one-year limitations period for personal injuries. *Bonner v. Perry*, 564 F.3d 424, 430-31 (6th Cir. 2009). The parties agree that this limitations period applies to Mr. Austin's claims. [R. 4 at 6; R. 5-1 at 2; R. 6-1 at 4-5; R. 18 at 4]; *see also Collard v. Ky. Bd. of Nursing*, 896 F.2d 179 (6th Cir. 1990) (claims brought in Kentucky under 42 U.S.C. § 1983); *Rose v. Oculam*, No. 6:07-336-DCR, 2009 WL 235671, at *3 (E.D. Ky. Jan. 30, 2009) (assault and battery); *Anderson v. Knox Cnty.*, 6:17-133-KKC, 2018 WL 7500205, at *8 (E.D. Ky. Oct. 3, 2018) (failure to intervene claim is subject to statute of limitations for underlying claim). Further, under federal law, a § 1983 claim accrues when a plaintiff knows or has reason to know about his injury. *Fox*

3

*v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007). Excessive force claims accrue on the date the excessive force occurred. *See id*. Therefore, absent tolling, Mr. Austin would have needed to file his claims by January 1, 2021 for them to be timely.

"Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run." *Campbell v. Grand Trunk W.R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). The Defendants easily carry this burden. The events giving rise to this action occurred on January 1, 2020. [R. 1-1 at 4.] This action was filed on November 21, 2022. *Id.* at 1. More than one year passed between the events giving rise to the claim and Mr. Austin filing this action, so the Defendants showed that his claims are untimely.

However, the burden then shifts to Mr. Austin to show that an exception to the statute of limitations applies. *Campbell*, 238 F.3d at 775 ("If the defendant meets this requirement, then the burden shifts to the plaintiff to establish an exception to the statute of limitations.") In Mr. Austin's response to the motions to dismiss, he argues that the limitations period should be tolled because the alleged use of excessive force caused him to be of unsound mind. [R. 18 at 4 (citing Ky. Rev. Stat. § 413.170(1)).] By statute, Kentucky courts toll the statute of limitations if the plaintiff is of "unsound mind," which means that they are "incapable of managing [their] own affairs." *Se. Ky. Baptist Hosp., Inc. v. Gaylor*, 756 S.W.2d 467, 469 (Ky. 1988) (discussing Ky. Rev. Stat. § 413.170(1)). This exception applies if the injury giving rise to the cause of action itself causes the state of unsound mind. *Powell v. Jacor Comms. Corp.*, 320 F.3d 599, 603-04 (6th Cir. 2003).

Mr. Austin's response alleges that the Defendants' conduct caused a traumatic brain injury that "left him incapable of managing his own affairs." [R. 18 at 5.] But his complaint does not go so far. It alleges that the defendants "physically assaulted" him, "kneed him in the

4

temple, rendering him unconscious," again assaulted him in the cruiser, then "violently assaulted him" in the emergency room, where Mr. Doty attempted to strangle and suffocate him. [R. 1-1 at 4-6.] The complaint states that this conduct caused a traumatic brain injury resulting in frequent headaches and memory loss, including no memories of these events. *Id.* at 5. His treating neurologist "is not surprised that Tony has no memory of most of what transpired, given the nature of the traumatic brain injury that resulted from him being beaten and assaulted about the head and face." *Id.* at 5. Further, he references "considerable mental and physical pain and suffering [and] . . . serious and permanent neurological and other injuries[,] . . . [including] a traumatic brain injury and occipital neuralgia." *Id.* at 10. The Defendants argue that these allegations fail to establish tolling based on Mr. Austin's state of unsound mind. [*See* R. 19 at 2 ("Mr. Austin does not go so far as to allege the requisite incapacity, but only that he suffers from headaches, cognitive decline, and memory loss.").]

The Defendants are correct that the complaint does not sufficiently plead grounds to toll the statute of limitations. Because Mr. Austin's claims are evidently untimely, he must have plead the grounds to toll the statute of limitations in his complaint. *Reid v. Baker*, 499 F. App'x 520, 524 (6th Cir. 2012) ("[W]hen the face of a complaint makes it apparent that the time limit for bringing the claim has expired, plaintiff must affirmatively plead why the violations were not discovered earlier and why the statute of limitations should be tolled."). His complaint would need to establish that he is "of such unsound mind as to render [him] incapable of managing [his] own affairs." *Gaylor*, 756 S.W.2d at 469.

Mr. Austin's complaint fails to do so. He does explain the conduct and resulting injuries which he now claims created an unsound state of mind. [*See* R. 1-1 at 4-6.] But these allegations are insufficient. "[T]he 'mere assertion of a psychological problem' does not suffice

5

to show an inability to manage day-to-day affairs." *Chunn v. Se. Logistics, Inc.*, 794 Fed. App'x 475, 478 (6th Cir. 2019) (quoting *State v. Nix*, 40 S.W.3d 459, 463 (Tenn. 2001)) (applying Tennessee's unsound mind exception to the statute of limitations). The closest his complaint comes to alleging an inability to manage his day-to-day affairs is his reference to "memory issues that are ongoing." [R. 1-1 at 4.] However, ongoing memory loss does not "necessarily make[] a person incapable of managing his day-to-day affairs." *Chunn*, 794 Fed. App'x at 478; *see also Tidaback v. City of Georgetown*, No. 5:15-cv-226-JMH, 2017 WL 1217165, at *4-6 (E.D. Ky. Mar. 31, 2017). And his complaint does not "make any allegations about specific day-to-day affairs he cannot handle due to these ailments." *Chunn*, 794 Fed. App'x at 478. Mr. Austin's complaint does not "affirmatively plead . . . why the statute of limitations should be tolled." *Reid*, 499 F. App'x at 524.

**B**

Nevertheless, dismissing this action is not warranted at this time. Mr. Austin's response to the motions to dismiss includes affidavits of himself and his partner explaining his inability to manage his own affairs. [R. 18-1; R. 18-2.] His partner, Rebecca Medley, indicates that "without [her] daily assistance [Mr. Austin] could not safely live alone" because she manages his financial and medical affairs. [R. 18-1 at 1.] Further, he "forgets to eat" and "often becomes confused regarding his location" outside of the home. *Id.*

The Defendants correctly argue that the Court cannot consider these affidavits because, at this stage, analysis is limited to the four corners of the complaint. [*See, e.g.*, R. 19 at 2]; Fed. R. Civ. P. 12(d); *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 405 (6th Cir. 2012). However, this does not mean that dismissal is required. "Ordinarily, when the omission of a critical allegation in a complaint is highlighted by a defendant's motion to dismiss, the

6

appropriate method for adding new factual allegations is to request leave to amend the complaint in conjunction with responding to the motion to dismiss." *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 521 (6th Cir. 2008).

Mr. Austin's response to the motions to dismiss seeks leave to amend as an alternative to denying the motions. [R. 18 at 11.] The federal Rules direct the Court to "freely" grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Justice certainly requires leave to amend in this matter. The Sixth Circuit directs that "[i]f it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." *Brown v. Matauszak*, 415 Fed. App'x 608, 615 (6th Cir. 2011) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1483 (3d ed. 2010)). "Leave to amend is especially appropriate when the complaint was originally filed in state court and thus not written to satisfy the federal pleading standard." *Id.* (citing *Robinson v. Chuy's Opco, Inc.*, No. 1:17-CV-123, 2017 WL 4247547, at *2 (S.D. Ohio Sept. 25, 2017); *McKee v. Am. Brokers Conduit*, No. 12-2406-STA-tmp, 2013 WL 11765826, at *4 (W.D. Tenn. Jan. 4, 2013)).

Mr. Austin's affidavits "purport to contain factual support for his assertions." *Jacobs v. FLOORCO Enter., LLC*, No. 3:17-cv-90-DJH, 2017 WL 8896193, at *3 (W.D. Ky. Sept. 29, 2017). Mr. Austin could correct the defect in his pleading by including the information provided in the affidavits outlining his inability to manage his own affairs within the complaint. Consequently, the Court will deny the motions to dismiss without prejudice and grant Mr. Austin leave to amend. *See also Lucas v. Chalk*, 785 Fed. App'x 288, 292 (6th Cir. 2019).

## III

Justice requires that Mr. Austin be permitted to amend his complaint. Because the Court is permitting amendment and a new complaint is forthcoming, it will not address the remaining arguments in the Defendants' motions to dismiss. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendants' Motions to Dismiss **[R. 4; R. 5; R. 6]** are hereby **DENIED WITHOUT PREJUDICE**; and,

2. Mr. Austin is **GRANTED** leave to amend. If he wishes to file an amended complaint, he shall do so within **thirty (30) days** following the entry of this Order.

This the 23rd day of August, 2023.

Gregory F. Van Tatenhove
United States District Judge